**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**Absolute Home Health, LLC,**<br><br>Debtor. | Chapter 11<br>Bankruptcy No. 23-03559<br>Honorable A. Benjamin Goldgar |

### PLAN OF REORGANIZATION, DATED JUNE 16, 2023 FILED BY ABSOLUTE HOME HEALTH, LLC

Now comes Absolute Home Health, LLC (the "Debtor"), propounding its Plan of Reorganization (the "Plan") under Chapter 11 of the Title 11 of the United States Code ("Bankruptcy Code"), proposing to pay its creditors from future income generated by ongoing operations and the collection of outstanding receivables.

The Debtor is a subchapter V debtor, and this Plan is governed by subchapter V of the Bankruptcy Code, 11 U.S.C. 1181 *et seq*.

The Debtor's bankruptcy was filed in tandem with a related case, *Home Healthcare Renewal Services, Inc.* ("HHRS") (HHRS's case number 23-03562 in the United States Bankruptcy Court for the Northern District of Illinois) because the HHRS, due to a legacy cash management system, received income for the Debtor, which conducted home healthcare services, issued invoices, maintained regulatory compliance, and so forth.

The Debtor provides administrative priority for its Debtor's bankruptcy counsel. Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes. Neither the Debtor's proposed counsel, or the subchapter V trustee, have yet filed applications for administrative expense compensation.

The Debtor's Plan divides claims into three classes. The first class provides for payment to the secured claim of Capital Dude, LLC, the "purchaser" of future receipts. The second provides for payment to the secured claims of the Internal Revenue Service and Illinois Department of Employment Security.

The third provides for the payment to the Debtor's approximately $503,184.77 in allowed general unsecured claims.

The Debtor's counsel's administrative fee and expense claims, as well as those of the subchapter V Trustee, are to be paid in full over the course of 60 months.

There are no claims of insiders, but if any such claims are levied, they will be subordinated and will not receive a distribution unless all other classes of creditors receive payment in full. Equity security holders will not receive a distribution.

All creditors should review this Plan in its entirety. **Your rights may be affected. You should read these papers carefully and discuss with your attorney. A Ballot Form is attached hereto as Exhibit A.**

**Exhibits to this Plan include:**

A. Ballot
B. Projection of income/ledger of receivables
C. Monthly Operating Reports

## ARTICLE I: *Classification of Claims and Interests*

1.01   Class 1      Secured Claim of Capital Dude, LLC

1.02   Class 2      Secured Claims of the Internal Revenue Service and Illinois Department of Employment Security

1.03   Class 3      General Unsecured Claims: Allowed claims of creditors which are unsecured.

## ARTICLE II: *Treatment of Administrative Claims and Trustee Compensation*

2.01   <u>Unclassified Claims</u>. Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes.

2.02   <u>Administrative Expense Claims</u>.

   a. *Professional Fees.* Each holder of an administrative expense claim allowed under §503 of the Bankruptcy Code will be paid in full at a rate of $500.00 per month, commencing with the Effective Date of this Plan (as defined in Section 7.01), in cash. Before the 60th month of the plan concludes, the administrative expense claim will be paid in full from revenues generated by collection of outstanding receivables, or upon such other terms as maybe agreed upon by the holder of the claim and the Debtor.

   b. *United States Trustee Fees.* This case is a subchapter V Chapter 11

   case. As such, no U.S. Trustee fees are required to be paid under 28 U.S.C. §1930(a)(6).

  c. *Subchapter V Trustee Fees.* All fees required to be paid to the appointed subchapter V Trustee pursuant to Court order shall be paid in full within 60 days of the Court's order approving such fees.

 2.03 <u>Priority Tax Claims.</u>

  The Debtor is in the process of amending certain tax returns. It, and its counsel, have been endeavoring to obtain necessary information from the prior payroll processor. As filed, priority tax claims total $536,954.86, but the Debtor anticipates that amended claims will – shortly – show sharply reduced amounts.

**ARTICLE III:** *Treatment of Claims and Interests Under the Plan*

  Claims and interests shall be treated as follows under this Plan:

 **3.01** **Class 1 – Secured claim of Capital Dude, LLC**

  The Debtor scheduled Capital Dude, LLC, as holding a secured claim in the amount of $313,000.00. Capital Dude, LLC, has not filed a proof of claim, and repeated entreaties to the attorney who has appeared on its behalf have not yielded material response.

  The Debtor proposes to pay the claim of Capital Dude, LLC, with monthly payments of $5,216.67 per month, commencing 30 days after the effective date of the plan. Capital Dude, LLC will retain its lien on future revenues until its secured claim is paid in full.

 **3.02** **Class 2 – Secured claims of the Internal Revenue Service and Illinois Department of Employment Security**

  Claims have been filed by the Internal Revenue Service and Illinois Department of Employment Security valuing their secured claims at $278,686.13 and $15,427.09, respectively. These claims were not scheduled by the Debtor and, as with the priority claims above, the Debtor expects to see them amended to sharply reduce their value.

  Absent such amendment or reduction in its claim, the Debtor proposes to pay the claim of the Internal Revenue Service with monthly payments of $4,644.77 per month, and the Illinois Department of Employment Security with monthly payments of $257.12, commencing 30 days after the effective date of the plan.

 **3.03** **Class 3 – Allowed general unsecured claims**

{00219808 2}

Allowed general unsecured claims will be paid at 100% of their value, pro rata, $503,184.77 with aggregate monthly payments of $8,386.41, commencing 30 days after the effective date of the plan.

### ARTICLE IV: *History of the Debtor, Description of Assets (Liquidation Analysis) and Projected Income*

    4.01    <u>History of the Debtor</u>

The history of the Debtor and HHRS, as relevant here, commences when they was purchased by Stori Worth ("<u>Worth</u>") and her husband, Carl, on or about January 18, 2019. Worth was a trained nurse, and Carl a businessperson.

By May of 2019, Carl had died. Worth attempted to keep the Debtor and HHRS afloat but without training to do so. Additionally, the seller of HHRS had – before the closing – entered into a loan agreement with the Small Business Administration. This loan was undisclosed at the time of purchase, and was for at least $133,249.92. This was seized by the SBA from payments that the Debtor and HHRS were entitled to receive from the federal government for payments due to the Debtor and HHRS by Medicare.

The 2020 COVID-19 pandemic, along the way, sharply reduced the market for home healthcare services being rendered by the Debtor and HHRS.

Finally, as detailed in 4.03 below, the Debtor had – prior to the petition date – performed inadequately regarding their billing practices, leading to significant uncollected receivables. Finally, to make ends meet, the Debtor and HHRS resorted to lenders like Captial Dude, LLC.

It has only been the protection of the automatic stay and the rigor imposed upon them by the bankruptcy process that has enabled the Debtor and HHRS to turn things around. The Debtor and HHRS are improving their procedures and policies, collecting revenue at a rate higher than ever, paying staff and quarterly withholdings on a timely basis, and will be able to pay 100% of their claims owed.

    4.03    <u>Assets of the Debtor/Liquidation Analysis</u>

The Debtor's most significant asset is $1.274 million dollars in uncollected receivables. Insofar as the Debtor expects certain filed claims to be reduced, these are sufficient to pay a 100% dividend to allowed claims upon their realization.

Since the petition date, at least one serious offer has been made for the purchase of the Debtor and HHRS (and attendant employment of Worth) but this offer was predicated on conditions that the Debtor's counsel considered

{00219808 2}

unacceptable, e.g., complete exclusivity.

The value of the Debtor is generated by the continued operations of the Debtor. As a result, creditors will derive the most benefit from allowing the Debtor to restructure and generate income to satisfy the payments under the Plan.

 4.04 Projected Income

The Debtor must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business.

The Debtor projects income to be derived from two sources – its ongoing income, and the collection of its unpaid receivables.

Financial projections, as such, are difficult to render, predicated as they are on the value of the Debtor's uncollected receivables. Remittances from Medicare and insurance companies are regularly untimely even in the best of circumstances; the Debtor attaches to this Plan a copy, as Exhibit B, of the Debtor's most recent ledger of receivables, totaling in value about $1.274 million dollars. The Debtor will have cumulative projected disposable income (as defined by Section 1191(d) of the Bankruptcy Code for the period described in Section 1191(c)(2) sufficient to pay the required payments under the Plan. The Plan is a 5-year plan. The final Plan payment will be in approximately 2028.

 4.05 Operations During Chapter 11 Proceeding

Attached as Exhibit C are the Debtor's operating reports filed in the Chapter 11 proceeding as of this date. These reports – only three in number as of this date – reflect modest positive cash flow since the commencement of the case. Given its positive cash flow, it will be possible for the Debtor and Absolute to arrange their relationship such that the Debtor will be able to fund this plan.

## ARTICLE V: *Allowance and Disallowance of Claims and Estimation of Claims*

 5.01 Disputed Claim. A disputed claim is a claim that has not been allowed ordisallowed by a final non-appealable order and as to which either (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed and the Debtor has scheduled the claim as disputed, contingent or unliquidated. The Debtor scheduled no disputed claims.

 5.02 Estimation of Claims. The Debtor may, at any time, request that the Bankruptcy Court estimate any the claim of any creditor pursuant to §502(c) of the Bankruptcy Code regardless of whether it ever files a proof of claim. In the event

{00219808 2}

that the Bankruptcy Court estimates a disputed claim, the estimated amount may constitute either the amount of the allowed claim or a maximum limitation of the claim.

5.03    Prepayment of Claims. The Debtor reserves the right to offer prepayment of claims to creditors before the expiration of the Plan without penalty or premium. Acceptance of prepayment by creditors shall be purely voluntary. The prepayment shall be conditioned upon no affect or impairment of the Debtor's ability to satisfy its obligations under the Plan.

5.04    Lapsed and Unclaimed Distributions.

(a)    Any distribution that has not been cleared within ninety (90) days of the date of thedistribution will lapse.  Lapsed distributions will revert to the Debtor.

(b)    If any distribution is returned as undeliverable, no further distributions to such creditor will be made unless the Debtor is notified in writing of the creditor's current address. Upon receipt of the notification, the Debtor will remit all missed distributions to the creditor without interest. All claims for undeliverable distributions must be made on or before the first anniversary of the Effective Date of the Plan. If any claims are not made within that time, all unclaimed distributions will revert to the Debtor. Nothing in the Plan will require the Debtor to attempt to locate any holder of an allowed claim.

5.05    Litigation Claims. The Debtor does not anticipate filing any litigation claims.

## ARTICLE VI: *Provisions for Executory Contracts*

6.01 Rejected Executory Contracts and Unexpired Leases. The Debtor is not party to any executory contracts or unexpired leases.

The Debtor is seeking to engage professionals to assist with collection and other services; whether pre- or post-confirmation, the Debtor will seek Court approval for such engagement.

## ARTICLE VII: *General Provisions*

7.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed inthe Code are used in this Plan.  These definitions are supplemented by the following:

(a)    The Effective Date ("Effective Date") of the Plan will be the 30th day after

the Order confirming the Plan is a final order.

(b)     The "Debtor" refers to the Debtor either preconfirmation or postconfirmation, as the case may be.

7.02    Conditions to Effective Date. The following conditions precedent may affect the occurrence of the Effective Date: (1) failure to obtain confirmation; (2) modification of the Plan, which requires approval of the court; (3) the Order of Confirmation is vacated, amended, modified or stayed; or (4) the Order of Confirmation is the subject of any appeal, reconsideration or other review.

7.03    Contested Plan Confirmation. If the Debtor does not receive sufficient votes to confirm the Plan, pursuant to Section 1191(b), the Debtor shall seek to confirm the Plan as it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and have not accepted the Plan. In the event of a contested confirmation, the Debtor shall remain as the Disbursing Agent for all Plan payments.

7.04    Remedies Upon Default. In the event that the Debtor fails to make its Plan payments when due, and does not cure any such default within 30 days of the occurrence of such default, creditors may seek relief from the Plan injunction to enforce the terms of the Plan or, if the case has been closed, may enforce the terms of the Plan without further relief from the Bankruptcy Court.

7.05    Severability. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.06    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of the entity.

7.07    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.08    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.9     Disbursing Agent. The Debtor will be the disbursing agent for the Debtor forthe purpose of distributions and payments to be made pursuant to the Plan.

      7.10    Notice: Any Notice of Default shall be sent to the Debtor's counsel by e-mail to jstorer@wfactorlaw.com and wfactor@wfactorlaw.com, and shall be effective when sent. Any Notice of Default must also be sent to the Debtor via first-class mail at 1715 N. Division St., Suite 7, Morris, IL 60450. Debtor may notify creditors, in writing, of any change of address for either the Debtor or counsel.

## ARTICLE VIII: *Discharge, Return of Property and Vesting of Assets*

      8.01    Discharge. On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code. However, the Debtor shall not be discharged of any debt imposed by the Plan. After the Effective Date, your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence. Notwithstanding the foregoing, discharge of Capital Dude, LLC's debt is as of the Debtor's completion of payments to it.

      8.02    Vesting of Assets. On the Effective Date of the Plan, Debtor's right, title and interest in and to its assets shall vest with the Reorganized Debtor.

## ARTICLE IX: *Retention of Jurisdiction*

The Bankruptcy Court shall retain jurisdiction over this Chapter 11 Case for the following purposes:

9.01 Resolution of any and all objections to claims and requests to estimate claims.

9.02 Determination of all questions and disputes regarding all causes of action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Effective Date between (a) the Reorganized Debtor and any other party or (b) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Chapter 11 Case.

9.03 The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

9.04  Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

9.05 Allowance of all claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Reorganized Debtor or its estate pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

Dated: June 16, 2023                                    Absolute Home Health, LLC.,

                                                        By: /s/ Justin R. Storer

One of Its Attorneys
William J. Factor (6205675)
Justin R. Storer (6293889)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (312)373.7226
Fax:    (847) 574-8233
Email: jstorer@wfactorlaw.com

{00219808 2}